UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM A. LORENZ,

                      Plaintiff,
v.                                              **DECISION AND ORDER**
                                                        14-CV-210S
ERIE COMMUNITY COLLEGE, et al,

                      Defendants.

## I.    INTRODUCTION

Plaintiff, William A. Lorenz, brings this action against Defendants Erie Community College ("ECC"), Martha Dixon, Edward Holmes, and Mary Beard, asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*[1] Defendants have moved for summary judgment, seeking dismissal of Lorenz's claims under Federal Rule of Civil Procedure 56. For the reasons discussed below, Defendants' motion is granted and the claims are dismissed.

## II.    BACKGROUND[2]

Lorenz has been employed at ECC as a full-time professor of Economics in the Department of Social Studies since 1984. During the relevant period, his supervisor was

---

[1] The Complaint also states a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, but the parties do not address the claim in the motion papers and it appears to have been abandoned. In any event, there is no Title VII claim here, as Lorenz alleges discrimination only on the basis of age and disability. See, e.g., Murphy v. Bd. of Educ. of Rochester City Sch. Dist., 273 F. Supp. 2d 292, 314 n. 20 (W.D.N.Y. 2003) (disability and age discrimination claims are not cognizable under Title VII).

[2] The facts are derived principally from the parties' Local Rule 56 Statements, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motions are recounted below. The facts are undisputed unless otherwise stated.

Defendant Beard, who served as the Assistant Academic Dean of Liberal Arts. Defendant Holmes served as the Associate Vice President for Academic Affairs, and Defendant Dixon was the Director of Distance Learning and oversaw Lorenz's use of online courses. Ray Barker, who is not a Defendant, was the head of the department in which Lorenz taught.

Lorenz was born in 1953 and suffers from pulmonary disability and cervical radiculopathy, which impact his ability to breathe and to walk. Lorenz asserts that these issues were well-known at ECC, but Defendants claim they were not aware that Lorenz suffered from any disability. Lorenz contends that Dixon, in particular, was aware of his afflictions. In the spring of 2012, Lorenz alleges that he staggered while walking past Dixon in the hall and she looked "like she had seen a ghost" and did not acknowledge him.

In the Fall Semester of 2012, Lorenz was scheduled to teach five "seated" or in-person classes, as well as two online classes. Because five classes made up a full course load, Lorenz not only met the minimum to receive his regular salary, but also received additional compensation for the two "over load" courses. During the semester, Dixon states that a student came to her with a concern regarding Lorenz's online course. Dixon states that the student told her that the course was lacking in content and could be finished in one weekend, and the student was concerned she would not gain an appropriate knowledge base from the course. Based on this report, Dixon accessed Lorenz's online course and found that the content was lacking and that the format was not ADA compliant. For example, Lorenz used scanned exam files that would not be compatible with the voice recognition software used by blind students. Lorenz admits

2

that the exam format was not ADA compliant, but disputes that the content was lacking. Lorenz also disputes that a concern was brought to Dixon's attention, contending that Dixon invented the complaint as a means to target him.

Dixon brought her findings regarding Lorenz's online course to Beard and Barker, who then brought the matter to Holmes. With input from the union, the Defendants and Barker made the decision to remove Lorenz's scheduled online classes until he had met certain requirements to ensure that the course contained appropriate content and was ADA compliant. In order that Lorenz would not lose income, Beard offered to allow him to teach two additional classes until he was able to meet the requirements to regain his online classes. Lorenz contends that this was a hollow offer, as he was not able, due to his lung condition, to teach additional in-person classes. He further contends that, when he told Dixon that he needed his online courses because he didn't have the lung capacity to teach any more seated courses, Dixon indicated to him that perhaps it was time to consider retiring. Dixon disputes making any comments regarding retirement.

Lorenz asserts that, once he changed his tests and put them in ADA-compliant formatting, his online courses met all of ECC's mandatory requirements. Lorenz further asserts that he was treated differently than the other online faculty and singled out, because the requirements he was directed to fulfill in order to reinstate his online teaching privileges were "guidelines" for other online professors at ECC, including those who were not disabled. He contends that Defendants did not assess whether other ECC faculty members' online courses were compliant and that no other faculty members were required to meet the requirements imposed on him. Defendants contend that the decision to take away Lorenz's online courses was due to noncompliance, and not to age or

3

disability, and that they did not examine other online courses for compliance because there were no complaints about those courses.

On November 14, 2012, Lorenz filed a union grievance regarding the loss of his online courses. The grievance cites several articles of the Faculty Federation of ECC Collective Bargaining Agreement, including the provisions related to online and distance learning. It does not cite Article 7, which sets forth the anti-discrimination policy, nor does the grievance otherwise mention age, disability, or any form of discrimination.

Lorenz filed a complaint with the Equal Employment Opportunity Commission on September 24, 2013, alleging age and disability discrimination. Upon receiving a dismissal and notice of right to sue, he brought this action on March 26, 2014. Lorenz's online courses were ultimately restored in the Fall of 2015, when ECC changed to a new software platform for online courses.

### III. LEGAL STANDARDS

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "As to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

## IV. DISCUSSION

Lorenz claims that ECC discriminated and retaliated against him based on age and disability.

### A. Discrimination Claims

"The burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), governs claims of discrimination under [both] the ADA [and the] ADEA." Ben-Levy v. Bloomberg, L.P., 518 Fed. App'x 17, 18 (2d Cir. 2013); see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (noting that claims for age based-discrimination brought pursuant to the ADEA are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green); Primmer v. CBS Studios, Inc., 667 F. Supp. 2d 248, 256 (S.D.N.Y. 2009) ("Disability discrimination claims under the ADA are analyzed under the familiar burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green."). "Under the McDonnell Douglas framework, the plaintiff must first establish a *prima facie* case of discrimination . . . [a] plaintiff meets that burden by showing that (1)

5

[he] was within the protected [category], (2) [he] was qualified for [his] position, (3) [he] suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination." Holtz, 258 F.3d at 76-77 (internal quotation marks and citations omitted). With respect to the final factor, "[a] showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted).

"By making out this 'minimal' *prima facie* case, even without evidence of discrimination, the plaintiff creates a presumption that the employer unlawfully discriminated . . . and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action." James v. New York Racing Association, 233 F.3d 149, 154 (2d Cir. 2000) (internal quotation marks and citations omitted). If the employer is able to proffer a nondiscriminatory reason, "the presumption [of discrimination] evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." McPherson v. NYC Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006).

Assuming, arguendo, that Lorenz has made out a *prima facie* case for his discrimination claims,[3] the claims nevertheless fail as a matter of law because Defendants have proffered legitimate, nondiscriminatory reasons for their actions. Lorenz argues,

---

[3] For the purposes of the analysis here, this Court assumes, but does not decide, that Lorenz has satisfied the "adverse action" element of this inquiry and that his health conditions render him an individual with a disability within the meaning of the ADA.

6

without supporting evidence, that Dixon made up the student complaint in order to justify having targeted his online courses. But, even if that were the case, it is undisputed that the materials in the online course were not ADA compliant, as required by ECC. Further, Holmes, Beard, and Barker agreed with Dixon that the course lacked appropriate content and did not meet ECC's minimum standards. "Unsatisfactory job performance is a legitimate nondiscriminatory ground for discipline." Mark v. Brookdale Univ. Hosp., No. 04-CV-2497 (JBW), 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005).

When a plaintiff sets forth a *prima facie* case of discriminatory motive, and the defendant satisfies its burden of production with admissible evidence showing a legitimate, non-discriminatory justification, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (alterations and internal quotation marks omitted). Although Lorenz criticizes and questions Defendants' reasoning for removing his online classes, he has pointed to no admissible evidence, other than a single comment regarding retirement and his own feelings, to support his assertion that Defendants' proffered rationale is actually a pretext for discrimination. These are not a sufficient basis to demonstrate that Defendants' proffered reasons are pretexts for discrimination. See Moore v. Verizon, No. 13-CV-6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination."); Polo v. Xerox Corp., No. 10-CV-6288-FPG, 2014 WL 317171, at *5 (W.D.N.Y. Jan. 28, 2014) ("Plaintiffs feelings and beliefs are

not substitute for persuasive evidence that identifiable, valid comparators were treated in a meaningfully different manner." (internal quotation marks omitted)). Moreover, "discussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination." Hamilton v. Mount Sinai Hosp., 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007).

Courts are not permitted to second-guess an employer's evaluative business determinations, such as the one ECC made in this case. See, e.g., Phipps v. Comprehensive Community Development Corp., No. 00CV6063-RJH, 2005 WL 287413, at *18 (S.D.N.Y. Feb. 4, 2005) ("it is well settled that courts should not second-guess the good-faith business determinations and criteria that employers adopt in running their organizations"); Maturine v. American Intern. Group, Inc., No. 04CV9064-GBD, 2006 WL 2347806 (S.D.N.Y. Aug. 14, 2006) ("It is not the Court's role to second-guess an employer's non-discriminatory business decisions."). This Court recognizes that, on this summary judgment motion, Lorenz is entitled to every reasonable inference in his favor. But any such inferences must be weighed against the other evidence in this case, including the uncontested evidence that Lorenz's online courses were not compliant with ADA requirements. When so weighed, the incidents cited are insufficient to raise an inference of discrimination.

Although it may have seemed unfair to Lorenz that he was obligated to meet requirements that were only guidelines for other faculty members, the discrimination laws are not meant to address unfair behavior. Williams v. NYC Dep't of Sanitation, No. 00 CIV. 7371 (AJP), 2001 WL 1154627, at *15 (S.D.N.Y. Sept. 28, 2001) ("[U]nfair treatment or personal animosity is not actionable, only discriminatory treatment is." (internal

quotation marks omitted)). Even assuming that Lorenz was targeted by Defendants, he "has not shown that such treatment occurred because of [his] age [or disability], which is a *sine qua non* for [a] discrimination claim." See Weichman v. Chubb & Son, 552 F. Supp. 2d 271, 286 (D. Conn. 2008). Accordingly, the discrimination claims are dismissed.

## B.    Retaliation Claims

Like discrimination claims, retaliation claims brought pursuant to the ADEA and the ADA are analyzed under the burden-shifting framework set out in McDonnell Douglas. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) ("The McDonnell Douglas burden shifting analysis used in claims of discrimination in violation of Title VII also applies to retaliation claims . . . The same standards and burdens apply to claims of retaliation in violation of the ADEA."); Reyes v. Krasdale Foods, Inc., 945 F. Supp. 2d 486, 493 (S.D.N.Y. 2013) ("Retaliation claims under the ADA are also evaluated under the McDonnell Douglas burden-shifting framework.") (citing Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)). "The court's first step is to determine whether the plaintiff established a *prima facie* case of retaliation . . . A *prima facie* case of retaliation under the ADEA [or ADA] requires proof that: (1) the plaintiff was engaged in an activity protected under the ADEA [or ADA]; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997). "Even if a plaintiff establishes a *prima facie* case of retaliation, if the defendant identifies a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for

retaliation." Wright v. Storch, Amini & Munves, P.C., No. 12CV2852-LTS-MHD, 2014 WL 1663125 (S.D.N.Y. Apr. 25, 2014) (citing Hicks, 593 F.3d at 160).

Lorenz does not point to any evidence, and this Court finds none in the record, directly indicative of any retaliatory animus on the part of Defendants; therefore, he must rely on circumstantial evidence to establish his *prima facie* case. See Hicks, 593 F.3d at 170. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close." Murray v. Visiting Nurse Services of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (internal quotation marks and citations omitted); see also Pierre v. Napolitano, 958 F. Supp. 2d 461, 484 (S.D.N.Y. 2013) (collecting cases, citing Murray for proposition that "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation"). Assuming, *arguendo*, that Lorenz can prove that he suffered adverse employment actions, his claims fail because he has not demonstrated a nexus between his protected activities and the alleged adverse actions. Nor has he demonstrated that the legitimate, non-discriminatory reasons that Defendants have proffered as justification for complained-of actions constitute pretexts for discrimination, as discussed above.

The parties do not make clear what, exactly, are the protected activities in which Lorenz is alleged to have engaged. However, it appears that the union grievance, which was filed shortly after Lorenz's online courses were taken away, does not meet the criteria of a protected activity. "An employee engages in protected activity when she complains

about or otherwise opposes conduct that she reasonably believes constitutes forbidden discrimination or retaliation." Bader v. Special Metals Corp., 985 F. Supp. 2d 291, 318 (N.D.N.Y. 2013). Although "[c]omplaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language[,] . . . ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); see also Ramos v. City of New York, No. 96 CIV. 3787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) ("[T]he complainant must put the employer on notice that . . . discrimination is occurring."). Lorenz's union grievance made no complaint regarding discrimination, nor even a mention of age, disability, or his purported inability to teach additional seated courses due to his health. Accordingly, it does not constitute protected activity.

And, although the EEOC complaint and this lawsuit would appear to be protected activity, as both allege discrimination, Lorenz does not point to any new adverse employment action that took place after they were filed. Indeed, the only change in circumstances would appear to be the restoration of his online courses in 2015. Under these facts, there is no evidence of retaliation. See Chung v. City Univ. of New York, No. 12CIV4045GBDRLE, 2014 WL 11462811, at *4 (S.D.N.Y. Aug. 27, 2014) (no retaliation claim where "the retaliatory actions alleged by Plaintiff are merely a 'continuation' of the adverse actions that Plaintiff alleged as the basis of his discrimination claim"). For these reasons, the retaliation claims are also dismissed.

**C.    State Law Discrimination Claims**

Having dismissed all of Lorenz's federal claims, this Court declines to exercise

11

supplemental jurisdiction over the remaining claims under NYSHRL. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## V. CONCLUSION

Lorenz has failed to rebut the non-discriminatory purpose offered by Defendants, and has demonstrated no link between protected activity and any adverse employment action. Accordingly, his claims are dismissed.

## VI. ORDERS

IT HEREBY IS ORDERED that Defendants' motion for summary judgment (Docket No. 31) is GRANTED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: June 10, 2018
Buffalo, New York

                                            s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge